Thank you, Your Honor. May it please the Court, very quickly let me say that we represent two state's attorneys from downstate Illinois. There had been three below, but Mr. Kavanaugh was elected to the bench. It is not part of the appeal. The thrust of our... Are you, would you identify yourself? Oh, I'm sorry, I beg your pardon, ma'am. No. Thomas Brecker from the Thomas More Society. We are counsel of Brecker for the interpreters here and below. All right. Well, counsel, you're very familiar with this case. I think you were in the same position in the federal courts when that case was before them. Yes, that's right. And this is the question I have for you. Yes. Assuming we, assuming we were to, assuming we were to affirm... Yes. What's, what's the point of this intervention? Well, I was going to say at the outset, Your Honor, it's a precautionary appeal in the event that you would consider reversal. Well, let's say we reverse. Let's say we reverse. Yes, Your Honor. And send it back to the circuit court. Let's say we say that the order disallowing the intervention petition is vacated. Yes, Your Honor. That would allow you to file anew a petition to intervene in the circuit court, should we remand. True? Yes, it would, Your Honor. And so once again, the question is, what are we doing here? Well, Your Honor, we would ask that you, in the event you would reverse on the merits, that you would, in fact, hear our intervention and not do that, but reverse so that we might proceed. And I understand... There are other arguments below which we think should have been considered, but were not. And, of course, not only did the circuit court deny your request to intervene, but the circuit court did accommodate the interested parties by allowing their brief to be filed as an amicus as opposed to as a party brief. We did, Your Honor. And so I believe the record is complete in terms of what position your clients take on the issues before us. Yes, Your Honor. Those issues on the merits are argued by the two state's attorneys who sought to intervene and also by a number of others who have joined an amicus filings before this court. All right. And as I indicated, we are giving you a very short period of time because I think your brief is very complete, and I think you articulate exactly what you want us to consider. And if there's nothing further that you'd like to expand upon from your brief, we thank you for submitting. Your Honor, as surely in view of your comments, we will rest at our submission. All right. Thank you very much. Thank you, Your Honor. Thank you. Now we'll call the adjoining case. Thank you. We'll start on a brief intervention, obviously, Your Honor. Yes. Yes. And just so the record's clear, could you both say who you're representing so that... Michael Scodro from the Illinois Attorney General's Office on behalf of the state's defendants and the police department. I'm Lori Cheek, and I'm here on behalf of the plaintiffs' background. Thank you, Your Honor. All right. Now we'll address the accompanying appeal that provides much more interest, I think. So we'll go ahead and ask that the appellants in that appeal step forward, introduce yourself, and you can begin. There are 15 minutes for each side ordinarily, and we will try to keep the parties to those With the understanding that we have a lot of questions, we'll certainly make allowances for that as well. We are attempting to take a break at no later than 10.20, let's say, but we may shoot for an earlier time. Thank you, Your Honors. Again, as I said, I'm Lori Chaitin. I'm here on behalf of the plaintiffs, Dr. Allison Coward and the Hope Clinic for Women, who are appealing from the circuit court's dismissal of their complaint challenging the under the Illinois Constitution. Plaintiff's complaint alleges that the act imposes irreversible harms on young women, including We get the thrust of your complaint, and really one of the key questions before us is what really distinguishes this case from the case that was before basically the Seventh Circuit? Why does this case, why is this case not within the holding of the Seventh Circuit? Your Honor, for a number of reasons. The Seventh Circuit reviewed by its own terms a very narrow question of the facial validity of the adequacy of the judicial bypass process under the judicial bypass framework that was never addressed the harms of the notification requirement itself and the lack of justifications. It never looked at the Why do you think that is? If you say that they never did address those harms, never did address those issues, why do you think they didn't? Your Honor, because of the procedural posture that that case came up in, you have to keep in mind that there have been a challenge to the 1983 Parental Notice of Abortion Act where like the 1995 Act, the judicial bypass process was by its own terms incomplete and as a result blatantly, facially invalid under the Bilotti Framework. And so when we came to court in 1995, we immediately presented the lack of completeness and the blatant facial invalidity and immediately got an injunction What is the Bilotti Framework? Wasn't it four factors? The Bilotti Framework was that if you were going to have a mandatory parental involvement law, there had to be an alternative procedure. It could be judicial, it could be another procedure whereby a minor could go to court and prove that she was mature enough to make her own decision or that it was in her best interest not to do so. And that had to include, had to be an expeditious and a confidential process and it had to include expeditious and confidential appeals. And the statute here, as I said, was by its own terms incomplete, did not include rules for an expeditious and confidential appeal. So it was because of the blatant unconstitutionality of it, we obviously went to the federal courts and said this law just can't stand. And that injunction stayed in place for over a decade. But we know why. We have the new statute. No, no, I'm talking about the 1995 statute. We know why it was, the injunction stayed in place. Because it was dependent, the enactment was missing a certain necessary part and that was the Supreme Court's rules. And it didn't enact it until sometime later. And once it did, the federal litigation began anew. And I understand you're saying that, Ms. Chaitin, that the Seventh Circuit was very narrow and it didn't reach certain issues that you think may have, should have been reached. But the question is, why didn't you ask that it be remanded if those issues were viable, if there was merit to those issues, why not request the Seventh Circuit to remand to address those issues that you indicate were not addressed? Your Honor, we were never able to raise Illinois constitutional claims in the federal courts. Well, why didn't you come here first? That litigation was initiated in 1984. I jokingly say to my counsel I was in law school then. But that lawsuit was initiated in 1984 because of the blatant defect in the prior statute. All the claims, though, that are related to the question now regarding the Illinois Constitution were the same. So I don't understand. If the Illinois Constitution is providing a greater right, then why were the plaintiffs not here in the state court where they could litigate state and federal constitutional law? Your Honor, they went to federal court because there already was an existing framework and it was absolutely clear that the law was unconstitutional under that framework. We were never able to bring Illinois constitutional claims before the federal courts because of the Eleventh Amendment bar. And keep in mind that once the Seventh Circuit dissolved the injunction in the summer of 2009, we could have gone back to the district court and we could have said, let's look at an equal protection challenge. But the plaintiffs instead chose the more efficient, more appropriate method of coming back to state court and raising all of their claims at one time. Raising all of the Illinois constitutional claims that could never have been brought previously in federal court. And that includes an equal protection challenge to a statute that raises a classic equal protection violation. We've got a statute here that treats similarly situated people differently. It treats pregnant minors differently based on how they exercise the fundamental right to abortion. Before we get into that, would it be true to say that in the federal court you raised solely a facial challenge? It is true that we raised a facial challenge about the blatant defect of the statute on its face. Counsel, counsel, calling it blatant doesn't make it so or enhance your argument one bit. We know what the rulings were below, or the rulings were in federal court. So I ask you to just leave it to that as opposed to characterizing it as blatant. I apologize, Your Honor. But that dictated what the strategy was. It was more efficient to go there. There are all of these Illinois constitutional claims and the parties are entitled to come to Illinois court and have the court interpret the Illinois Constitution. This is a state that is in limited lockstep, as the Illinois Supreme Court said in Caballos. But limited lockstep doesn't lock the courthouse doors. Limited lockstep is not a doctrine of preclusion. It's a doctrine of constitutional interpretation whereby the Illinois courts determine the relationship, if any, between the meaning of the U.S. Constitution and the meaning of the Illinois Constitution. When you say it doesn't lock the state court doors by virtue of federal court rulings, is it fair to say that the circuit court read it a little differently? The circuit court did, and we believe that the circuit court erred. The circuit court applied collateral estoppel to the equal protection claim and to the substantive due process claim here. And the equal protection claim, as you repeatedly assert in your brief, was never reached by the federal circuit court appeals. Not only was it not decided, but as defendants concede, it was never actually litigated. And in order to have collateral estoppel, you have to have an identical issue that was actually litigated and decided by the prior court. That alone is reason to reverse on the collateral estoppel basis. And once you get beyond collateral estoppel... But we're reviewing what the trial court did to no vote. So if we get to the merits, whether or not the statute can withstand scrutiny under the Illinois Constitution, what case would you suggest would tell us that as far as the federal constitution goes, that this statute is infirm? Your Honor, what I would first suggest is that we look at Committee for Educational Rights v. Edgar that was decided by the Illinois Supreme Court in a situation where there was an equal protection challenge brought before the Illinois courts where a nearly identical statute... It was the educational funding scheme in Illinois. A nearly identical situation had been presented to the U.S. Supreme Court in San Antonio v. Rodriguez from Texas. And the U.S. Supreme Court said, we're going to apply a rational basis protection challenge here and we're going to uphold this scheme. When the Illinois Supreme Court looked at a nearly identical scheme in the Edgar case, the Illinois Supreme Court first looked at the question of are we going to apply that same analytical framework? We're in limited last step, but are we going to look at that same analytical framework?  and determine is there a fundamental right to education under the Illinois Constitution? It determines that there's no fundamental right to education that would dictate a strict scrutiny level of review and it says, no, that means we're going to do a rational basis level of review just like the U.S. Supreme Court did. But it didn't stop there. If the defendants were correct that the limited last step doctrine is a doctrine of preclusion that bars where the results in federal cases are automatically determinative of the results here, the Illinois Supreme Court never would have gone further to engage in a lengthy analysis of the record before the court and of the rational basis equal protection analysis and what we submit here is that the plaintiffs are entitled to put that case on. In fact, let me ask you regarding that specific assertion. You say that the case below was curtailed or was short-circuited by virtue of the 216 motion filed by the state and accepted by the circuit court. But quite a bit of litigation had ensued prior to that moment. And I'm just wondering what would be involved in a decision on the merits by the circuit court had the motion not been granted? What more had to be done below? Your Honor, the circuit court had been clear at the time that the court entered the temporary restraining order and actually repeatedly thereafter that we were going to set a date for a preliminary injunction hearing that we would bring our witnesses in, that we would present the scientific evidence that forms the basis of the allegations here. Is there any dispute? Is there really any dispute regarding much of the evidence that you would have put forth in your case? Your Honor, we believe that there are decades of scientific studies, decades of scientific research There is. that demonstrate There may be. And that's why I'm asking you, do you know whether the state would challenge that decades-old scientific evidence and say, no, it's all faulty? Your Honor, the state has never challenged any of the factual assertions in this case. They instead have argued based on the legal principles. And we submit that the Illinois General Assembly in passing the Parental Notice Act in 1995 made certain assumptions about the harms of abortion. It made assumptions that there are long-standing medical and psychological consequences. What's our test for those assumptions? Isn't our test... Everybody makes assumptions, first of all. Everybody makes assumptions. You can't really make a decision until you at least have somewhat of an understanding of what would be involved in the decision to make. And you can't know it all, so you have to assume some things. And don't we really simply require reasonable assumptions? And if there are reasonable assumptions made and the decision is based on those reasonable assumptions, then deference is owed to the legislative body in making its decision. Well, first, Your Honor, we submit that this is a fundamental right, and where a discriminatory classification affects a fundamental right, a strict scrutiny analysis is required. But even under a rational basis analysis, the legislature is not entitled... The courts have an obligation to assure that the legislature is not classifying arbitrarily, as the Illinois Supreme Court said in the McCabe case. So rational speculation doesn't mean specious or discredited facts. And what we have here are assumptions that the General Assembly made that are utterly discredited, that are completely contradicted by the vast array of scientific research and the opinions of the leading authorities. And that's what we want... Isn't there really all sorts of information on both sides of the issue? Your Honor, there isn't... that suggests exactly the opposite of what the plaintiffs suggest? I want to answer your question, but I also forgot to reserve time for rebuttal, so I do want to say that I would like to reserve some of my time for rebuttal, and I apologize, but I didn't want to forget to ask that. Your Honor, there is an amicus brief that the courts have put on the other side. That amicus brief isn't relevant to the proceeding in this procedural posture. What we've got is a situation where the court has to take the well-pleaded allegations as true, and as the amicus brief of the leading psychiatric, psychological, medical, and public health organizations demonstrates, the so-called studies that the amicus brief relied on in any event are methodologically unsound. But the bottom line is we're asking for a trial. We want to go back... Let me ask you once again... We all know that the case has a long, long history. Any discussions, any ideas as to what... how much time and effort would be involved in the trial that you envision that your side should have received? Your Honor, we don't know how long that trial would be. We didn't discuss that with the other side. I don't know what kind of... How long would your side have? We would probably need a few days to put on our evidence. It depends on how it went in and what kind of form that the trial had put on. I think you're entitled to a good deal of time for rebuttal because rebuttal may be pretty important here. So I'd like you to go ahead and wrap it up and give you time for rebuttal. Well, Your Honor, we believe that the Circuit Court erred here in cutting this case off prematurely based on its erroneous assumptions, erroneous views that the collateralists said that the limited lockstep doctrine is a doctrine of preclusion rather than constitutional interpretation and also on the question of whether we could meet the no set of circumstances test that the Circuit Court would have the Court rigidly apply. That is not the state of affairs in Illinois. It is true that the defendants have cited cases with regard to the no set of circumstances test that articulate the test but not a single one of them did what the Court did here which is to say that once you've alleged constitutional violations you don't have the right to pursue your case. And I look forward to answering more questions on rebuttal. Thank you very much. Good morning and may it please the Court. Again, I'm Michael Scotro from the Attorney General's Office on behalf of the defendants. In response to a question that was asked at the outset this case is largely controlled by the Seventh Circuit's decision in Zavarez. As pointed out on page 7 of our brief that Court's decision goes quite a ways in describing exactly why this satisfies, the act as a whole satisfies. Let me ask you a point out, a point blank when the the Seventh Circuit issued its decision, did it in anywhere in its decision make reference to the Illinois Constitution? Absolutely not, Your Honor. And for that reason... So your assertion in your brief is totally dependent on the limited lockstep doctrine that you believe is somehow binding on the courts or? Your Honor, let me be clear about the limited lockstep doctrine. I appreciate that. Before you go into that, let me ask you one question. The equal protection claims were neither litigated nor decided in the federal court, were they? Your Honor, the equal protection claims were in the complaint and the only reference... But they weren't decided were they? They were only decided in, no Your Honor, only in reference in the course of the... And they just weren't decided were they? They were not decided. Okay, thank you. But of course, had the Seventh Circuit seen any kind of real merit to the equal protection or had it seen a problem that might come up it could have directed the parties to address that very issue in their supplemental briefs and it could have then issued a decision on that ground alone. It could, Your Honor. But it didn't. And it did not, and it's clear why it did not. It could have, but it didn't, did it? It did not, Your Honor. It's clear why it did not. Why didn't it? Because the U.S. Supreme Court has rejected precisely that equal protection theory, Your Honor. As has every U.S. Court of Appeals to address it. And even plaintiffs on page 40 of their briefs concede were in lockstep on equal protection. Well, then let's go to the lockstep doctrine because I think that is a pretty important issue, if not dispositive issue, is it? It is, Your Honor. But then let's examine that. Sure. And you do talk about the one case where the Supreme Court deviated or got away from the limited lockstep and that's, of course, people v. Washington. Yes, Your Honor. And in fact but I take somewhat offense to your brief when you say that the only reason or the only door that might be opened to the Supreme Court, the Illinois Supreme Court, doing that again would be a conflicted opinions by the U.S. Supreme Court. I don't think, I don't think that the Illinois Supreme Court said because the U.S. Supreme Court justices were conflicted on that point of whether actual innocence could be raised in a post-conviction proceeding. Therefore, we have the right to decide under Illinois Constitution we have the right to recognize that as a constitutional relief. I don't think the Supreme Court did that. Did they? Your Honor, they didn't. And if our brief suggests What our brief meant to say, Your Honor, and I hope it's clear, but perhaps it's not. You seem to say that that is a condition precedent, that that is something that is required before the Supreme Court can deviate from the limited lockstep doctrine. And I just question why you would make that assertion because it can't be true. Let me clarify our position, Your Honor. Thank you. Kabbalah sets a fairly high bar for departing when the two are synonymous or close to synonymous, as is the case for example with due process in the Washington case. Our point regarding Washington was that these are the three factors that the Court went to great lengths to cite to explain why Washington falls into that small category of cases where you ought to depart. Now to be sure one was the fact that the Herrera decision that Washington rejected, the U.S. Supreme Court decision on Herrera was deeply divided. But there were two others that we also talk about and I think they're equally important. One is the fact that the constitutional conventions regarding an actual innocence claim, which was the subject of Washington, were completely silent. Nothing to suggest that had been considered much less rejected by the constitutional delegates. So let me stop you right there. Sure. When you say the constitutional convention was silent on that issue. Yes, Your Honor. That necessarily means that the Supreme Court recognized a constitutional right that wasn't addressed during the constitutional convention and therefore suggests that the Illinois Supreme Court is willing to recognize or evolve our what is the right thing to do as opposed to being bound by what the U.S. Supreme Court and let's not forget that the U.S. Supreme Court itself has in no uncertain terms recently at least done away with decades old if not century old precedent because it decided that the decisions were wrongly decided and to that extent I can't understand why our Supreme Court wouldn't likewise say our limited life step doctrine is less limited than it's been in the past. Your Honor, I'd like to address that. The third factor in Washington also plays into this, to our situation here. The third was that there was a legal tradition in Illinois favoring the position of the innocent individual bringing a freestanding claim. Let me contrast that why the Illinois Supreme Court would not depart in this case. The first reason is the convention. With regard to Section 6, with regard to Section 2 due process, it could not be clearer that the abortion right was not intended to be part. Washington there's nothing to suggest that it would have departed in Washington. I don't disagree with anything you've asserted and I think you've done ably. I think your brief is really well written but you know you're starting with the Illinois Supreme Court decision in Washington. And we both know that it didn't start there. It started with this court's decision in Washington that recognized that. That didn't necessarily address that issue in the same way that the Illinois Supreme Court did. And so to the extent that that the first reviewing court decided that issue differently than the Illinois Supreme Court suggests that that's part of the process. That the first reviewing court decides an issue and then the Supreme Court fine tunes it and says why it's right. And your honor I don't disagree but the reviewing court and the Illinois Supreme Court must remain true to Cabalas and Washington did. Washington remained true to Cabalas because it relied on precisely the things in Cabalas that they said allows the courts to depart. What did Cabalas stay true to? What did it announce? Well you say we have to stay true to Cabalas as if Cabalas is some sort of directive from the U.S. Supreme Court that we have to recognize. Cabalas says we can, the Illinois Supreme Court will depart from the U.S. Supreme Court when there's good reason to. And to that extent I'm saying that Cabalas can't be read as some sort of tying our hands. You're right it says you can depart when there's good reason to but Cabalas goes on to explain what those good reasons could be and it says one good reason would be if the convention debate suggests that's the way to go. That's what the delegates had in mind as opposed to silence in Washington as opposed to directly the opposite in our case. And it said if there's a legal tradition in Illinois and I think it's important to remember here unlike in Herrera context the Washington context in this case in 1970 when they passed, when they enacted the Constitution it was criminally unlawful to have an abortion in Illinois. And indeed that remained the law. It was reaffirmed in 1972 two years after the ratification of the Constitution. I think all those points are well taken. I think there's a lot of strong arguments that you make in your brief. Here's my concern. We have jurisprudence, federal jurisprudence we have Illinois jurisprudence we have that's a tradition among all the states and it seems to me that when the opportunity arises for Illinois jurisprudence to mature, to develop that that opportunity should be taken and maybe, maybe when the circuit court feels bound by a federal court that we should say, you know what that would we don't dispute what the federal district federal appellate court did but we want you to decide this on Illinois constitutional grounds even if, even if those paths are parallel from start to end. But we think that for Illinois jurisprudence to advance that we should have cases decided on Illinois law. What's wrong with that? Your Honor, if I could make two points in response to that. The first is, our position is not contrary to the notion of closing the courthouse door. That is not our position. Our position is that the courthouse door is open to handle the Illinois state claim, but that the first step on the merits of that claim is the cabalis analysis. The courthouse door is open for the cabalis. And I should add I'm not sure I understand. You're saying that the door is open, but the circuit court was bound by the federal circuit court of appeals decision? No, Your Honor. So was the circuit court perhaps, did it jump the gun? Perhaps when it decided that in fact it was bound by the seventh circuit decision. The circuit court correctly determined that it was bound because we're in lockstep but it made its own lockstep analysis. There's a difference between saying you can't even come and argue for a departure from Illinois law. And that's not what we're saying. The difference is you come and you say we have to depart. Did the circuit court address those departures? It did, Your Honor. And it's ruling? It does. It concludes on page A14 that there's no reason to think that we would be departing based on the constitutional convention analysis that we've made. Other than that conclusion, what did it assert was the basis for its conclusion? The other thing it asserted, Your Honor, is it looked at the very paragraph of Family Life League on which plaintiffs rely. That paragraph, even read as they would like the court to read it, which is reading in an abortion right into the word privacy in Article I, Section 6, contrary to the constitutional convention history, even read that way, the paragraph itself makes very, very clear it's merely adopting the U.S. Supreme Court's substantive due process jurisprudence in Roe. It cites Roe, it cites Akron Center, the other U.S. Supreme Court case, and it cites two out-of-state cases, both of which rely entirely on federal law. So even Family Life League, which is the flagship case in plaintiffs' argument, itself makes clear that to the extent there's a right being read into the word privacy, it is precisely the federal right. And so even, Your Honor, even if there were a case where, and this was the second point, even if there were a case where it made sense to depart from lockstep, and of course there will be and ought to be cases like that. Washington is a perfect example. But let me, here's the other point I was going to raise again. When you mentioned Washington, do you think that the arguments that you're making before us regarding limited lockstep application were pretty much the same arguments that were made before Washington was decided in front of those two reviewing courts before us? That limited lockstep tied the hands of the Illinois Appellate Court that it could not recognize actual innocence as a basis to grant post-convention relief and as well as in before the Illinois Supreme Court. Don't you think those very same arguments were presented? Your Honor, I have no doubt, though I haven't seen the brief from the state in that case. I haven't seen it either, but I have no doubt either. I'm sure it was a brief that was heavy in that regard. But if that brief told the court that the constitutional conventions had affirmatively rejected the very argument, as is true here, if they had told the court that legal history in Illinois in 1970 was directly contrary, as it is here, they would have been misleading. But then again, we either go with silence at the constitutional convention that allows the court to perhaps go beyond what was declared there, or we can say that the statements that were issued weren't really meant to address this very same issue, and leaving the door maybe just ajar. Well, Your Honor, if I could make a final point on lockstep, or others, because we don't have much time. It's this. It's that even if the court were inclined to do what it did in Washington, even though the record from the convention and legal history doesn't support such a decision here, I'm not sure where it would happen. The privacy right itself, under Family Life League, clearly brings in federal law. They admit equal protection is in lockstep with federal law. The point was that if Illinois jurisprudence is to advance, and we need a full airing of the issues in the circuit court, and maybe the identical decision will be issued, and it would come before us, but it would come before us with a full record, as opposed to one that was decided on a 2615 motion. Your Honor, if I can respond to that, then. There is one thing that is clear in the Cabales line, and that is it is a legal determination whether or not we break lockstep. There would be no point in remanding. It would be unprecedented to remand for the purpose of developing a factual record to undertake the Cabales analysis. To be sure, if this court decides that we break from lockstep, and therefore a remand is needed, that's something different. But it is not consistent with the Cabales line to remand for the purpose of deciding whether we're still in lockstep. All right. Well, thank you very much. You only have five minutes. I just have a couple of points I'd like to make. First of all, I just want to be clear that the plaintiffs do not concede that we are in lockstep under equal protection. The plaintiff's position is completely consistent with Cabales here, where it identified us as a limited lockstep state. We are in limited lockstep under equal protection, and what that means is that we apply the same analytical framework typically as the U.S. Supreme Court does. It does not mean that the results in federal cases, and certainly in lower federal cases, determine automatically the result in Illinois cases under the protection clause. So are you asking us to say that the opening in Cabales, the Cabales analysis regarding limited lockstep, leaves an opening for this case to go outside of that limited lockstep? It doesn't. What Cabales does is absolutely leaves an opening for this case to go outside of limited lockstep. We've got the express rights of privacy. We have a ruling by the Illinois Supreme Court. Would that be a question of law? Would that be a question of fact that should be developed below? There are a couple of points. There are some legal issues, and there are some factual. Legally, there's the question of whether we would go outside of, you know, what does family life leave mean? What does it mean that the Illinois Supreme Court has said that there's a fundamental right to abortion? And even under Cabales' limited lockstep analysis, again, we're talking about the same analytical framework. And so when you think about that, there's nothing in Illinois fundamental rights jurisprudence that says that you apply anything other than strict scrutiny. There's nothing there that says, well, we're going to say this is a fundamental right, but then we're going to let these results of these federal cases be the determination. Moreover, again, on the equal protection claim, the U.S. Supreme Court's never resolved an equal protection challenge to a parental notice or a parental consent law. The Matheson case has... I don't understand your equal protection argument, but honestly you're contrasting pregnant minors with non-pregnant minors? Well, Your Honor, we're actually not contrasting them. The Illinois General Assembly is. Under the Consent to Medical Procedures by Minors Act, every pregnant minor in this state other than those who are choosing to terminate their pregnancy, gets to make every medical and surgical decision on their own throughout pregnancy, whether pregnancy related or not. Let me stop you there, because aren't those procedures that flow from a pregnancy apart from termination? Aren't those unavoidable? Don't they just come out necessarily by virtue of the medical condition of that person? So there really isn't any intervention. It just happens. Your Honor, there are many interventions that happen during pregnancy. And first of all, I want to make the point that when a person decides to carry a pregnancy to term, they're making a choice. They're making a choice not to terminate. Well, that's where they make that choice not to terminate. That's when the legislature stepped in and said, when you make this choice, here are the steps you have to follow. Your Honor, no, that's not correct. The parental notice statute says that before she can terminate, notice has to be given to parents. If she, on her own, chooses not to terminate and her parents are completely unaware of her pregnancy until at some point later in the pregnancy when there's no longer an option, those parents don't get involved in the discussion until they find out later when it may actually be too late. But the other thing that's important to keep in mind is that the consent to medical procedures by minor statute allows minors who are pregnant as well as those who are parenting and other situations to make every medical decision whether they're pregnancy related or not. She could consent to a tonsillectomy. She could consent to open heart surgery. She gets to make those decisions without being forced to involve somebody she doesn't want to involve in that decision. And keep in mind, most minors. But does the legislature have the right to make a distinction between a decision to have a tonsillectomy and a terminated pregnancy? Is there any distinction that they could make? That distinction is based on valid, underlying beliefs. And here what we have is we have assumptions. What's the rest of that sentence? If it's... If there's a valid basis for the legislature to pass a statute that is further propelling interest. They can make a distinction between a decision to take vitamins or whatever. If there is a valid justification here what we know is that the legislature's assertive purpose is in protecting minors and that the statute frustrates rather than furthers those obligations. The scientific evidence that is the underlying basis for the allegations here demonstrates that abortion is many times safer than carrying a pregnancy to term. In fact, 20 times safer for minors. That there are no psychological harms associated with abortion for the vast majority of women, including minors. And that the scientific research shows that minors are as capable as adult women of making rational medical decisions based on the risks, the benefits, and the alternatives that are presented to them through our common law required informed consent process. The final thing I do want to mention is that a lot of things were said at the Constitutional Convention and I think it's important... We know one thing for sure. We do. Roe was decided after. Roe was decided after. Roe was decided after. We know a number of other things, which is that both in terms of privacy and in terms of due process the delegates to the Constitutional Convention talked about an evolving constitution. A constitution whose rights would be given meaning and be determined by the judiciary. That's really advocating maturing or advancing Illinois jurisprudence independent of the federal constitution. That is correct Your Honor. And I think that it's really important to keep in mind that while we disagree with the state about Family Life League in many ways the fact that the Illinois Supreme Court has said there's a fundamental right to abortion under the Privacy Clause... Isn't that the case then though where they refer to federal cases and then they cite several state Supreme Court decisions but they don't talk about Illinois case law. They go directly to federal. Your Honor, they do cite to federal cases. Why didn't they examine the Illinois Constitution in that case then? You know, I can't tell you why they didn't examine it. But it's necessary though? It's not necessary. For your position? Your Honor, respectfully, because our position is that with regard to the Family Life League case is that the court identified the source of the right. The defendants, the Attorney General's Office had raised in that case the defense that this would be an invasion of the constitutional right to privacy both under the U.S. Constitution and under the Illinois Constitution. And the court said, you're right, there is that right to privacy. But it didn't go further with it because there was no factual predicate. The arguments that the state had made about harassment that would ensue if the list of abortion providers were provided wasn't going to happen. So there wouldn't ultimately be invasion of the woman's right to access to effectuate her choice to abortion. But the court, the statement that the Illinois Privacy Clause protects as fundamental the right to terminate a pregnancy is absolutely a holding of that case. And once the Illinois Supreme Court does that, then we have to give meaning to what that means under Illinois jurisprudence in terms of a fundamental right. But the bottom line, I think, as we have demonstrated here if you take the allegations of our complaint as true, that this would not survive a rational basis review, an intermediate level weighing like the New Jersey Supreme Court engaged in, it wouldn't survive The New Jersey Constitution has a little bit different right to privacy, doesn't it? Your Honor, it was an equal protection challenge under the New Jersey Constitution The New Jersey Constitution specifically has what's considered to be one of the strongest state constitutional rights to privacy, does it not? Your Honor, the New Jersey Constitution engages, as the defendants would say, in a looser approach to lockstep as we do. But my point is not, let's follow what New Jersey does, let's turn into New Jersey My point is that regardless You'll need to wrap up. I'm sorry? You'll need to wrap up Your last point. My point is simply that regardless of the standard review that gets applied here, the statute wouldn't stand if we prove the well-treated allegations. We are asking for the opportunity to go back to the circuit court to put our evidence on a trial If Illinois courts are going to develop Illinois law, they should do it on a robust record that we believe we can present. And thank you very much for your consideration. We want to thank all counsel The case will be taken under advisement